PETER R. BURTON, Respondent below, Appellant, v. ROBERT B. ROBINSON, PETER ROBINSON and ZADOC MILBY, Complainants below, Respondents.

THE goods of a testatrix remaining *in specie* in the hands of her Administrator *c. t. a.*, cannot be seized in execution of a judgment against the administrator in his own right, until he has closed as such Administrator, all the concerns of her estate; and if the goods so remaining in his hands consist of the balance of her personal property specially bequeathed in her will after the payment of her debts and funeral expenses, in trust to another for the separate use and benefit of a married woman for life, and after her death to be divided among her children, be seized in execution of a judgment against the administrator in his own right before he has closed as such Administrator, all the concerns of the estate of the testatrix, the Court of Chancery may and will, at the suit of the trustee against him and such judgment creditor, decree a specific execution of the bequest in the will by his delivery of the goods *in specie* to the trustee, and perpetually enjoin the judgment creditor from selling, or proceeding any further in his execution and levy upon them. This ruling, however, is not intended, nor is it to be understood, to abridge or impair in the slightest degree, the general right and power of executors and administrators to sell the goods and chattels coming to their

hands as such, either at public or private sale to *bona fide* purchasers, or to accept the same at a fair and *bona fide* appraisement, and thereby to convert the property in them and to make them their own, though still retained *in specie* in their hands, by paying all the debts of the testatrix, or intestate and discharging all the other obligations and liabilities to which they are lawfully subject in the due administration of them; for when that has been done by them, it is neither in the power of a court of law or a court of equity to question or disturb the right to, or the possession of the purchaser of them in the one case, or their own right to, or possession of them as the lawful and absolute owners of them, in the other.

THIS was an appeal from the Court of Chancery, in and for Sussex county. Polly Burton, who at the time of her death was residing under the same roof with her son, John H. Burton and his family, by her last will and testament, which was admitted to probate on the 13th of April, 1857, bequeathed all her personal property, valued, according to the appraisement at $513.72, to her son Henry Burton in trust to pay out of it her debts and funeral expenses, and the residue remaining after such payments, for the separate use and benefit of the wife of her son, John H. Burton, for the term of her life, and after her death, to her children. Her son Henry Burton, the trustee named in the will, was at the time of her death, in Central America, and there was no acceptance of the trust by him. Her personal property at the time of her death was all on the same premises on which she then resided with her son John H. Burton and his family, and thereupon passed into his custody and possession. Peter R. Burton, the appellant, who had before this time obtained a judgment in the Superior Court for the county, against John H. Burton, sued out in a few days after the death of the testatrix, an execution upon it, which was levied by the sheriff on the personal property in question, as the goods and chattels of John H. Burton, the defendant in the execution ; and there being no executor named as such in the will, and Henry Burton the trustee named in it, still continuing abroad in Central America, John H. Burton in a few days after the levy of the execution as before stated, applied for and obtained letters of adminis-

tration *c. t. a.*, on the estate of the testatrix, and proceeded in the due course of time, as her administrator, to have the property inventoried and appraised and return made of the same into the office of the Register of Wills in the county, and in a year or so thereafter appeared again before that officer and submitted his account of his administration as such administrator, in the usual manner, in which he charged himself with the appraised value of the goods and chattels inventoried as the personal property of the testatrix, and in which he claimed and was allowed by the Register, as a credit thereon, the amount of $38.40 paid by him for the funeral expenses of the testatrix, as the only expenditure incurred by him in it. In the meanwhile the execution of the respondent below, which had been levied upon the property, had been duly returned by the sheriff without any sale, and was afterward duly continued from term to term by writs of *venditioni exponas* regularly issued thereon. But in the meantime also, Robert B. Robinson on his petition presented for that purpose, had been duly appointed by the Chancellor, trustee under the will of the testatrix, in lieu of her son, Henry Burton, who still continued abroad, and as such trustee afterward, on the 4th of October, 1859, presented his petition to the Chancellor for an injunction to restrain the appellant, Peter R. Burton, as the judgment and execution creditor of John H. Burton personally, and also the latter, as the administrator, *c. t. a.*, of the testatrix, and the sheriff of the county who had levied the execution on the property in question, from proceeding to sell the same on the execution, and from permitting or allowing the same to be sold thereon, for the debt due from John H. Burton personally to the appellant Peter R. Burton, the prayer of which was granted and the injunction awarded on the usual terms by the Chancellor, in accordance with which Robert B. Robinson the Trustee, entered into bond in the Court of Chancery with Peter Robinson and Zadoc Milby as his sureties, to file his bill of complaint in the injunction suit thus instituted by him against the parties before mentioned by the time therein

designated, and otherwise to faithfully prosecute the same in the Court of Chancery. He afterward, however, failed to file his bill of Complaint in that Court within the time limited, by reason of which the injunction was dissolved by the Chancellor on the 19th of September, 1861, and the bond became forfeited. But notwithstanding the dissolution of the injunction, he subsequently filed his bill of complaint in the case, and the suit was still pending in the Court of Chancery upon it, when on the 5th of October following an action of debt was instituted in the Superior Court for the county upon the injunction bond by the appellant in this appeal, Peter R. Burton, against the respondents, Robert B. Robinson, Peter Robinson and Zadoc Milby, the other parties to it, to recover the penalty forfeited by the breach of the condition of it, which consisted solely in the failure of Robert B. Robinson, as trustee under the will of the testatrix, to file his bill of complaint in the suit in Chancery above mentioned, within the time prescribed for it. The pleadings in that action on the injunction bond in the Superior Court, terminated in a general demurrer and judgment thereon against the defendants on the 21st of April, 1862, and the same day they confessed judgment in the action to the plaintiff, the amount of it to be afterward ascertained by the Prothonotary of that court, when the following agreement in writing signed by the attorneys of the parties respectively, was entered upon the record of the case: "And now, to wit, this 21st day of April, 1862, after argument of demurrer in the above stated case and judgment thereon for demurrant, it is agreed by and between the undersigned counsel for the parties respectively, that the amount due on said execution and costs and that the said judgment shall in all things await the final decree of the Chancellor in the case now pending in the Court of Chancery, and that no proceeding shall be had or taken upon said judgment until such decree is made by the Chancellor."

The suit in Chancery which is referred to in the agreement, and which was the same suit which was now before

the court on the present appeal, was afterward proceded with and prosecuted to a final decision in that court, in which the Chancellor decreed among other things, that Peter R. Burton, the complainant, should be enjoined and restrained from proceeding at law under the said judgment recovered by him against the said John H. Burton, to seize or sell the said personal property bequeathed by the said testatrix in her last will and testament in trust as aforesaid, and that the same should be delivered over by the latter to the said Robert B. Robinson, trustee under the said bequest of the said testatrix, upon the payment to the said John H. Burton of the amount of money expended by him in the administration of her estate and allowed before the Register of Wills as aforesaid; also that the complainant, Peter R. Burton, should be enjoined and restrained from further prosecuting or executing the said judgment recovered in the Superior Court on the said injunction bond against the said Robert B. Robinson, Peter Robinson and Zadoc Milby, except for collecting the costs of suit in that action. And it was from that decree this appeal was taken.

*C. M. Cullen,* (*Comegys* with him), for the Appellant, contended that the Chancellor had erred in enjoining the appellant from farther prosecuting or executing the judgment recovered in the Superior Court against the Respondents on the injunction bond, except to collect the costs of suit in the action upon it, first, because it was recovered upon a cause of action which was not within the jurisdiction of a Court of Equity, but was a purely legal demand in its character, and as such was subject only to the jurisdiction of a Court of Law; and in the next place because it was recovered on a bond absolutely forfeited, which had no connection with, nor was subject to any of the equities involved in the suit then pending in the Court of Chancery, for his decision. That he also erred in decreeing an injunction to restrain the appellant from proceeding any further at law upon the judgment recover-

ed by him in the Superior Court against John H. Burton, to seize and sell the personal property in controversy, because as the administrator, *c. t. a.*, of the testatrix, duly appointed according to law, by accepting the goods and chattels of his decedent at their appraisment and charging himself as such administrator with the appraised value and amount thereof in his first and final administration account passed and allowed before the Register, he in law converted and appropriated them to his own use individually, and they thereby became his own personal property, and he was therefore only answerable to any one afterward for, or on account of them, or in any form of action, to the extent of their value in money as ascertained by the appraisement, that being the equivalent consideration for which he had accepted and purchased them as his own property, and with which he had charged himself in his administration account, and for which alone he was bound with his sureties in his administration bond for the benefit and security of all persons who had any interest in or claim against them; and although he was not appointed administrator of the estate until a few days after the appellant's execution had been levied upon the goods as his property, yet by relation and a well-known fiction, or rather a well-known retrospective effect and operation of a principle of law applicable in such cases, they would be presumed and considered as soon as he was appointed administrator, to have been in his possession as administrator and that his interest as administrator vested in them from the time of the death of his mother, the testatrix, particularly as they had always been in point of fact, in his actual custody and possession from that time. 1 *Wms. on Exrs*, 432. And as he could accept at their appraised value, so he could sell all the goods and chattels coming to his hands as administrator, and which in fact was almost the first thing that was done by an executor or administrator, at public sale, and in which he is only answerable for the value of them, having thus converted

them rightfully to his own and the purchaser's use. 2 Wms. on Exrs, 673. 1 Rop. on Leg, 565. 23 Pick. 128. That John H. Burton, the administrator c. t. a., of the testatrix, had duly administered the whole personal estate of his decedent, when he had filed the inventory and appraisement, and passed his final account of his administration of it, and in it charged himself with the whole value of the property in money, and had thereby converted them and become the complete and absolute owner of them in his own right, and which rendered them subject as his goods, to the appellant's execution and the lien of it, although it had been levied upon them a few days before his appointment as administrator, but was not returnable until several months after it. Burton's Admr. v. Tunnell et al, 5 Harr. 182. The order contained in the decree of the Chancellor on the administrator to deliver the property in question to the trustee, retaining the amount paid by him on account of the debts and funeral expenses of the testatrix, might disturb and derange and interfere with the due administration of her assets, and should not have been made without requiring the trustee to execute a refunding bond to the administrator to repay him whatever amount might become necessary to meet any liabilities still outstanding against her estate. That the Chancellor had misapprehended, and consequently had misinterpreted, the true and proper meaning of the agreement in writing, signed by the counsel of the parties respectively and endorsed on the record of the action on the injunction bond in the Superior Court, because he had erroneously supposed that by virtue of it, the judgment recovered in that action was to abide and become subject to the final decree to be rendered by him in the present suit, then pending before him in the Court of Chancery in Sussex county, and that the judgment itself had been rendered upon that agreement. But such was not the case, nor was such the proper and correct construction of the agreement. On the contrary, both the judgment on the general demurrer for the plain-

tiff had been rendered, and the final judgment had been confessed with authority to the prothonotary to ascertain the amount of it, before the agreement had been entered into between the counsel, and the sole purpose and meaning of it simply was to stay execution or process on the judgment until after such final decree had been rendered. But if the trustee appointed by him under the will of the testatrix, was entitled to the residue of the property and to proceed in any form or method against him for it, he had a much better and more adequate and efficient remedy in an action at law upon his administration bond against him and his sureties, than by a bill in equity against him and the appellant to release them from the execution and levy of the latter, and to recover the posses. sion of the specific goods and chattels in question which were of a depreciable and perishable nature, and which had already diminished very much in value since their appraisement, and therefore he should have been left to that remedy.

*A. P. Robinson,* (*T. F. Bayard* with him), for the Respondents. The bill filed in this suit by the respondents, expressly prays for relief against the appellant and an injunction to restrain him from proceeding upon the injunction bond referred to and which had been forfeited in the Court of Chancery by reason of the trustee's failure to file his bill of complaint in time, but proceedings in the interim in the action upon it were continued in the Superior Court and the judgment was afterward confessed under the agreement of counsel in terms which would speak for themselves, and the meaning of which could not be misunderstood. The appellant here, but the respondent in that court, submitted himself to that court, filed his answer on the 29th of July, 1862, and moreover by that written agreement of counsel entered upon the record of the action in the Superior Court on the 22d of April preceding the filing of his answer, the judgment on the bond was to await and abide the final

decree of the Chancellor in the present suit, and which expressly subjected it to that decree in respect to all the matters then in controversy between the parties in both courts. It was a matter clearly within the jurisdiction of the Court of Chancery, because the bill was for the specific performance and execution of a trust, a trust in words, in form and in substance, and peculiarly within the province of a Court of Equity to preserve, protect and enforce, for it was a bequest by last will and testament to a trustee specially named and appointed for the purpose of preserving and administering it as such, of personal property for the separate use and benefit of a married woman during her life, and after her death to be divided among her children, and the injunction prayed for was to restrain proceedings at law at once destructive of the objects of the trust. *Adams' Equity*, 194, *Story's Equity*, Secs. 874, 900, 962, 963. The appointment of an administrator and his returning an inventory and appraisment of the goods and chattels of the deceased and afterward passing an administration account before the Register and charging himself in it with the amount of the appraisement, does not affect or change the title to them, so long as they continue *in specie* in his hand, and cannot of itself merely constitute a conversion of them to his own use and make them his own personal property in any case, much less in a case where they are expressly given by a will in trust to another for the separate use and benefit of a married woman for life, and after her death to her children; because such acts were merely ministerial, performed under statutory regulations and requirements, and could be used only as evidence to ascertain the amount and the disposition or application of the assets of the estate by him in his official and representive capacity as the administrator of them. His possession of them as administrator, is in right of another and he deals with them purely as the representative of others, being responsible to two classes only, the creditors of the decedent and the legatees and distributees of

the residue after the debts are paid. Such acts therefore were evidence only as between himself and those interested in the due administration of the estate, and as to all other persons are *res inter alios acta,* and it was consequently unreasonable to contend or pretend that goods and chattels coming into his possession as administrator either before or after his appointment, could be seized in execution on a judgment of another against him personally and in his own right. *Rev. Code* 299. *Weeks v. Gibbs,* 9 *Mass.* 73 . 1 *Wms. on Exrs.* 565. 2 *Wms. on Exrs.* 799, 800. 1 *Rop. on Leg.* 302, 308. *Farr v. Newman,* 4 *T. R.* 621. The bequest under the will of the testatrix was of a residuary character to one for life with remainder over, and even, if there had been no express trust raised by it, the presumption of law would have been that the legatee for life was to take and enjoy the goods and chattels *in specie ;* and it was also a rule of law, as well as of equity, that a residuary legatee may follow such assets into the hands of a third party to whom they have been pledged by the executor for his own debt and have restoration *in specie.* 2 *Wills on Exrs,* 1007. 1 *Rop on Leg.* 302, 308. And such goods and chattels may be the subject of a trust. *Hill on Trustees,* 44. And a husband may be trustee for his wife. *Hill on Trustees* 59, and when no trustee is appointed by the will the husband is treated and regarded in equity, as the trustee of his wife. *Hill on Trustees,* 420. And when the debts and legacies are paid the executor becomes a trustee 'of the residue, and is subject in regard to it, to the ordinary rules respecting trust property. *Adams' Equity* 252. *Hill on Trustees,* 238. *Wilmot v. Jenkins.* 1 *Beav.* 406. The levy of the Appellant's execution on a judgment against John H. Burton upon the goods and chattels of the testatrix several days before the probate of her will and the grant of administration on her estate to him, was a trespass in law, and the facts alleged and relied on by the other side to constitute a conversion of the property in question to his own use by the administrator *c. t. a.,* of the testatrix, such as

the filing of the inventory and appraisement and passing his administration account on her estate and charging himself therein with the amount of their appraisement before the Register, was altogether groundless and fallacious independent of the reasons before assigned and the authorities cited in support of them, because they were all done long after the execution had been levied upon the property, and after it had been returned to the court from which it issued.   Nor could the appellant be allowed to take any exception to the decree of the Chancellor because he had ordered the property to be delivered by the administrator to the trustee under the will without requiring any bond of indemnity to be executed by the trustee to the administrator, for that was a matter which could only concern the administrator himself, and not the appellant who alone had appealed from the decree, the administrator having submitted to it without any appeal on his behalf; because it was not competent for the appellant to avail himself of any exception to the decree, which could only have been raised or urged by the administrator in case he had also appealed from it.

*Houston, Justice,* announced the opinion of the Court. In this case the principal ground of objection presented by the counsel for the appellant to the decree of the Chancellor appeared to be that by the grant of letters of administration *cum testamento annexo* to John H. Burton, on the estate of the testatrix, and the subsequent return of the inventory and the passing and filing of his administration account thereon and charging himself therein with the whole amount of her personal property contained in the inventory and appraisement before the Register, her goods and chattels in question were fully administered by by him as her administrator, and were thereby converted to his own use and became *ipso facto* his own goods and chattles *jure proprio*, and that too, from the time of her death, as by construction and operation of law both the

possession of and the property in them was thereby vested in him in his own proper right from that time, but in reply to which we must say in the first place, that there is nothing we believe to be found in any elementary work on the subject, or in any volume of reports that we are aware of, to sanction or sustain the principle, since the law was directly ruled otherwise in the leading and well considered case of *Farr v. Newman,* 4 *T. R.* 621, and which in the principal feature of it was strickingly analagous to the case now before us, with this essential difference and distinction in two most important particulars, however, that there was no special bequest in trust of the goods in that case, and it was in a court of law, and not in a court of equity. In that case a *fi. fa.* execution against the executor personally, or one who had become the husband of the executrix, was levied upon goods and chattels which were of the testator then in their possession. A considerable time had elapsed after the death of the testator, but the goods in the mean time had continued *in specie,* in the possession of his widow and executrix in the same house in which he had died, and were still there in the possession of the defendant in the house, who had since married her and was then living in it with her; and the main question was whether they were his goods by virtue of his marriage to the executrix, and as such were liable to be seized on the execution against him personally, or were more properly subject and liable to be levied upon under another *fi. fa.* execution which came to the hands of the sheriff at a later hour the same day, issued at the suit of other parties who had recovered a judgment against the executrix for a debt due from the testator, and which latter execution was against them as his executors and was according to the tenor of it to be levied *de bonis testatoris;* and after twice hearing it argued and after mature consideration of the question, it was decided by *Grose, Ashurst* and *Ld. Kenyon* (*Buller* dissenting) that goods of a testator in the hands of his executor cannot be seized in execution of a judgment against the executor in his own right, because they do not

become his goods until he has paid debts of the testator, or assumed liabilities as such executor, to the amount and value of such goods, and that they remain in his hands as executor until that is done by him. And such has been considered the settled law on the subject since that time, and was so said to be, and approved by Ld. Eldon in *McLeod v. Drummond,* 17 *Ves.* 168. But there is not, and there never was supposed to be, any thing in this ruling that would abridge or impair in the slightest degree, as seemed to be apprehended by the counsel for the appellant in their argument against it, the general right and power of executors or administrators to sell the goods and chattels coming to their hands as such, either at public or private sale to *bona fide* purchasers, or to accept the same at a fair and *bona fide* appraisement, and thereby to convert them and make them their own goods though still retained in their hands *in specie,* by paying all the debts of the testator or intestate, and discharging all the other obligations and liabilities to which they are lawfully subject in the due administration of them; and when that has been done by them, it is neither in the power of a court of law, or a court of equity to question or disturb the right to, or the possession of the purchaser of them, in the one case, or their own right to, or possession of them as the lawful and absolute owners of them, in the other.

But as a question of law merely, and without contemplating this case as one originating and still in a court of equity, according to the rules of which it can alone be properly considered, can an *administrator cum testamento annexo,* who has become the administrator of a last will and testament which directs that after paying the debts and funeral expenses of the testatrix, the balance of her personal property shall be delivered to a particular legatee named in the will for life, and after her death to be divided among her children, be said to have administered her estate, paid all her debts and discharged all the obligations and liabilities to which the goods so bequeathed are lawfully subject in the due administration of them, and which are alike im-

posed upon him as such administrator, both by the tenor of
the will and the condition of his official obligation, when
he has done no more than to take out the letters of admin-
istration, return his inventory, pay the funeral expenses,
there being no debts to satisfy, and passed and filed his
administration account before the register therein charging
himself as such administrator with the amount of the ap-
praisement thereof and received due credit for such funeral
expenses paid by him merely? Could such acts as those
which I have just stated, possibly constitute even in law
an administration of her estate in a legal sense, or in con-
templation of our statutory provisions on the subject, and
a lawful conversion of the balance of the goods so be-
queathed, so as to make them his own property in own
right absolutely? This simple question I think, is suffi-
cient to show the utter fallacy of such a proposition; for
it is as much a part of the due administration of the estate
and of the duty of the administrator, to deliver or pay the
residue to the legatee, as it was to pay the debts or funeral
expenses of the testatrix in such a case, which is recognized
and sustained by a decision of all the Judges sitting in the
Court of Errors and Appeals of the State, in which the
principle has been ruled that all the goods and chattels of
the deceased remaining *in specie* in the hands of the execu-
tor or administrator until he has closed all the concerns of
the testator or intestate, are unadministered goods, and on
the death or removal of such executor or administrator,
may be sued for and recovered as such by his successor in
office. *Burton's Admr. v. Twinell et al,* 5 *Harr.* 190.

But in this case the bequest of the goods and chattels in
question, was in express trust to another for the separate
use and benefit of a married woman for life and after her
death to be divided among her children, and which of it-
self rendered it a special object of the cognizance of the
Court of Chancery. But Henry Burton, the son of the
testatrix and the trustee appointed in the will, was at the
time of her death domiciled in a foreign country, and could
not accept the trust created by it. By the will no executor

was nominated, but the goods were in the actual possession of John H. Burton, another son of the executrix, in whose house she died, and in a few days afterward and before the appointment of any administrator on her estate, the appellent, who had previously recovered a judgment in the Superior Court against him, sued out upon it the execution in question against him, and had it levied upon the goods as his property. He, however, soon after took out letters of administration *c. t. a.* upon her estate, and afterward upon his petition to the Chancellor for that purpose, Robert B. Robinson was appointed trustee in lieu of Henry Burton, of the bequest in the will and thereupon presented his petition in the Court of Chancery, praying an injunction against the appellant and the administrator of the estate to prohibit any further proceeding and the sale of the goods upon the execution, which was granted and served and the same was stopped. He had at the same term entered into the injunction bond with the other respondents in the present appeal, Peter Robinson and Zadoc Milby, as his sureties, to file his bill of complaint against the appellant and the administrator within the time usually required in such cases, which he failed to do, whereupon the bond became forfeited and the injunction was dissolved. He nevertheless proceeded afterward to file his bill of complaint for relief in the premises as such trustee, and for a further injunction against them to prohibit the sale of the goods upon the execution, and at the ensuing term of the Superior Court the appellant instituted his action on the injunction bond against the respondents in the appeal, and pending the suit in the Court of Chancery on the bill of complaint, obtained judgment against them in the action on demurrer and by confession, amount to be ascertained by the prothonotary, when by the consent of parties the written agreement was entered into and signed by their respective counsel, to the effect that the amount due on the said execution and costs and the said judgment should in all things await the final decree of the Chancellor in the suit then pending in the Court of Chancery, and that no pro-

ceeding should be had or taken upon said judgment until such decree should be made by the Chancellór, and which final decree afterward rendered by him in favor of the complainant in it, ordering the goods in question to be delivered to the trustee, upon payment of the costs in the action upon the injunction bond in the Superior Court, and to the administrator of the testatrix the amount allowed him in his administration account for her funeral expenditures &c. and perpetually enjoining and restraining the appellant from proceeding any further on his execution against him, we now have before us upon this appeal for our revision.

What we have already said before proceeding in our opinion to state more particularly and in chronological order the facts of the case, has, of course, in our judgment disposed of the objection chiefly urged against the propriety of it, upon the ground of the alleged legal conversion and transmutation of the absolute property in the goods from the testatrix at the instant of her death to her administrator in his own right by virtue of the steps afterward taken by him as such administrator with regard to them. And I will therefore only take occasion now to add that if there could be any reasonable doubt about the true and proper construction of the law and the statute as applicable to the supposed case which was then suggested, there can be none whatever, when it is sought to be applied to a case like this, where the balance of the goods after paying her debts and funeral expenses, are expressly and specifically bequeathed in the will of the testatrix in trust to one specially appointed to hold them for the separate use and benefit of a married woman during her life, and after her death to be divided among her children. I do not mean, however, by any term which I have just used, to intimate the opinion that it was a bequest of a specific legacy in trust for such uses. All I mean to say is that for reasons best known to the testatrix, she chose to will and bequeath the balance of her personal property after paying her funeral expenses, (for it seems she left no debts, and her funeral expenses amounted

22

to $38.40 only, whilst the appraisement of it amounted to
$513.72) specifically in trust for the uses and purposes men-
tioned, and as the seizure and threatened sale of them un-
der the execution of the appellant against the administra-
tor personally, was about to defeat that specific object of
the trust, we think that it was not only within the appro-
priate sphere and province of the Chancellor, but within
the appropriate line of his duty in the exercise of his equi-
ty jurisdiction in such a case, to take cognizance of it, and
thus to protect and preserve the trust created under this
specific bequest of the testatrix. And this, we think, dis-
poses also of the objection, so far as his taking cognizance
and jurisdiction of the case merely is concerned, that there
was no necessity for it, inasmuch as the trustee, after the
conversion of the goods to his own use and benefit by a
sale of them on the execution of the appellant, would still
have had an adequate, ample and even a better remedy for
the recovery of the value of them in an action at law upon
the bond of the administrator against him and his sureties.
For it is enough to say in reply to that objection, that
the Chancellor not only had an inherent, original and
peculiar jurisdiction in such a case, but he alone could af-
ford the only remedy adequate to the specific performance
and execution of the special bequest of the testatrix in the
case.

Entertaining these general views in regard both to the
law and the equity of the case, we have not thought it
necessary to express any opinion upon the question pre-
sented with reference to the precise meaning and proper
construction of the written agreement signed by the coun-
sel of the parties respectively, and annexed to the record of
the judgment recovered by the appellant in the action on
the injunction bond in the Superior Court, except to say
that we do not think the final decree of the Chancellor in
the suit then pending in the Court of Chancery, under all
the facts and circumstances disclosed in the case, went
further in any respect than it might have gone without any
such agreement whatever in that case, and we do not under-

stand or consider that there was any thing in it to limit or restrict the complainant from asking for such a decree in the suit then pending before him.

The decree below is therefore affirmed.